United States District Court
Southern District of Texas
**ENTERED**
August 30, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JUSTIN NORMAN, et al.,[1] | § | |
| | § | |
| Plaintiffs. | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:16-cv-02396 |
| | § | |
| QES WIRELINE, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM, RECOMMENDATION, AND ORDER

Pending before the court[2] is Defendant QES Wireline, LLC's ("Defendant") Motion for Summary Judgment (Docs. 110 & 122), and Plaintiffs' Motion to Strike (Doc. 130). The court has considered the motion, the response, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion be **GRANTED**, and **ORDERS** that Plaintiffs' motion is **DENIED**.

## I. Case Background

Plaintiffs filed this action alleging that Defendant violated the Fair Labor Standards Act[3] ("FLSA") by misclassifying them and other similarly situated field engineers as exempt employees and

---

[1]     This case has had multiple case styles since it was filed. To avoid confusion, the court styles the case with Justin Norman as the first named Plaintiff because, although he has been dismissed, he is still listed as the first named Plaintiff on the docket.

[2]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 80, Ord. Dated Nov. 5, 2018.

[3]     See 29 U.S.C. §§ 201-219.

failing to pay overtime.[4]

## A.  **Factual Background**

Defendant  is  a  cased-hole  wireline  services  company headquartered in Fort Worth, Texas, with numerous locations within the United States including throughout Texas, Louisiana, Oklahoma, Mississippi, North Dakota, and Pennsylvania.[5]  Defendant provides various  services  including:  (1)  logging  services;  (2)  pipe recovery;  (3)  perforating;  (4)  slickline  services;  (5)  snubbing; and (6) tagging.[6]

Defendant's wireline jobs are performed by its wireline crews, which consist of wireline operators and engineers.[7]  The wireline operators  perform  the  majority  of  the  manual  labor  required  on jobs.[8]  The engineers "perform their primary duties in the logging cab, which is a mobile office space attached to a wireline truck containing  computerized  controls  and  data  monitors."[9]   The engineers are responsible for successful completion of each job and "are also responsible for conducting safety meetings, conducting quality  control  as  to  the  company's  equipment,  enforcing  the

---

[4]    See Doc. 4, Pls.' 1st Am. Compl.

[5]    See Doc. 110-11, Ex. J to Def.'s Mot. for Summ. J., DOL Reports pp. 19, 131.

[6]    See id. p. 65.

[7]    See Doc. 110-3, Ex. C to Def.'s Mot. for Summ. J., Decl. of John Castetter p. 2.

[8]    See id.

[9]    See id.

company's safety and health expectations, completing job tickets to customers showing the work performed, and generally, determining how best to complete the job."[10]  "Significant decisions that Engineers have to make during jobs include determining: the equipment to be used to perform requested services, the manner of rig up of equipment, what well pressure control measures to take, instrument depth control, well pipe manipulation, and whether and how to deploy explosives."[11]  These decisions made by the engineers have significant consequences to the people on the job sites, the environment, and Defendant's equipment.[12]

Defendant is registered with the United States Department of Transportation ("DOT") as a federal motor carrier, registration number DOT #885502, to carry oil field equipment and hazardous materials.[13]  Engineers drive DOT-regulated trucks and are required, as a condition of their employment, "to meet all of the Motor Carrier Act's [(the "MCA")] requirements for interstate drivers of DOT-regulated vehicles, including but not limited to the possession of a valid DOT Commercial Drivers' License ('CDL')."[14] Many of the trucks driven by the engineers are DOT-regulated because they: (1)

---

[10]     See id.

[11]     See id. p. 3.

[12]     See id. pp. 3-4.

[13]     See id. p. 4; Doc. 110-10, Ex. I to Def.'s Mot. for Summ. J., Def.'s DOT Registration.

[14]     See Doc. 110-3, Ex. C to Def.'s Mot. for Summ. J., Decl. of John Castetter p. 4.

have a Gross Vehicle Weight Rating ("GVWR") over 10,000 pounds; (2) exceed 10,000 pounds with an attached trailer; and/or (3) "are carrying hazardous materials in a quantity sufficient to require hazmat placarding under DOT regulations."[15]

Defendant regularly sends engineers across state lines and every engineer can be expected to drive interstate.[16]  Multiple Plaintiffs have confirmed that they regularly crossed state lines for jobs.[17]

## B.  **Procedural Background**

Justin Norman, Donnie Heater ("Heater"), and Brian Keith Baccus ("Brian Baccus") filed this lawsuit on August 8, 2016, alleging that Defendant violated the FLSA.[18]  On August 11, 2016, Heater, Brian Baccus, and Brent Baccus filed an amended complaint.[19] On September 8, 2016, Plaintiffs filed a notice that Justin Norman was voluntarily dismissed from the lawsuit.[20]

On October 5, 2016, Plaintiffs filed a motion for notice to

---

[15]    See id.

[16]    See id. p. 5.

[17]    See Doc. 110-5, Ex. D to Def.'s Mot. for Summ. J., Brent Baccus Dep. pp 25:16-19, 39:14-16; Doc. 110-6, Ex. E to Def.'s Mot. for Summ. J., Brian Baccus Dep. pp. 20:8-10, 31:9-12; Doc. 110-8, Ex. G to Def.'s Mot. for Summ. J., Frederick Matz Dep. p. 47:1-8; Doc. 110-9, Ex. H to Def.'s Mot. for Summ. J., William Cook Dep pp. 25:20-22, 45:25-46:5.

[18]    See Doc. 1, Pls.' Orig. Compl.

[19]    See Doc. 4, Pls.' 1st Am. Compl.

[20]    See Doc. 9, Pls.' Not. of Dismissal of Justin Norman.

potential plaintiffs and for conditional certification.[21]   On October 26, 2016, the court conditionally certified the following class:

> All current and former Engineers of QES Wireline LLC f/k/a Archer Wireline LLC (whether referred to as "Field Engineer," "Wireline Engineer," "Senior Engineer," "Case Hole Engineer," "Completion Engineer," or "Pipe Recovery Specialists") paid on a salary basis or salary plus additional compensation basis employed at any time in the three years prior to the Court's entry of this order (collectively, the "Class Members").[22]

Notice was allowed, and Defendant was ordered to turn over contact information for the Class Members.[23]

On January 25, 2019, Defendant filed its pending motion for summary judgment.[24]   On March 29, 2019, Defendant filed a supplement to its pending motion for summary judgment.[25]   On April 29, 2019, with the court's leave for the late filing, Plaintiffs filed a response to Defendant's motion for summary judgment.[26]   On the same day, Plaintiffs filed their pending motion to strike Defendant's supplement to its motion for summary judgment and certain evidence Defendant attached to its motion for summary judgment.[27]   On May 10,

---

[21]   See Doc. 16, Pls.' Mot. for Not. and Conditional Class Cert.

[22]   See Doc. 18, Ord. Dated Oct. 26, 2016.

[23]   See id.

[24]   See Doc. 110, Def.'s Mot. for Summ. J.

[25]   See Doc. 122, Def.'s Supp. to Mot. for Summ. J.

[26]   See Doc. 128, Pls.' Resp. to Mot. for Summ. J.

[27]   See Doc. 130, Pls.' Mot. to Strike.

2019, Defendant filed a reply in support of its motion for summary judgment and a response to Plaintiffs' motion to strike.[28]

## II. Plaintiffs' Motion to Strike

The court will first address Plaintiffs' motion to strike. Plaintiffs moved to strike Defendant's supplement to its motion for summary judgment, including the attached exhibits, and the declarations of Tonya Jacobs, John Castetter, and Josh Gotkin.[29]

### A.   Supplement to Motion for Summary Judgment

Plaintiffs' argue that the supplement to Defendant's motion for summary judgment should be stricken because it was untimely.[30] The dispositive motion deadline in this lawsuit was January 25, 2019.[31] Defendant filed its motion for summary judgment on January 25, 2019.[32] On February 7, 2019, the court held a hearing wherein Plaintiffs' deadline to file a response to the motion for summary judgment was extended until April 19, 2019, so that Plaintiffs could conduct a corporate representative deposition and review documents before responding.[33] At the hearing, the court ordered Defendant to gather information from managers regarding whether

---

[28]    See Doc. 134, Def.'s Reply in Support of Mot. for Summ. J.; Doc. 135, Def.'s Resp. to Mot. to Strike.

[29]    See Doc. 130, Pls.' Mot. to Strike.

[30]    See id. p. 2.

[31]    See Doc. 61, Ord. Dated July 27, 2018.

[32]    See Doc. 110, Def.'s Mot. for Summ. J.

[33]    See Doc. 120, Tr. of Feb. 7, 2019 Hearing p. 52; Doc. 135, Def.'s Resp. to Pls.' Mot. to Strike p. 2.

"engineers weighed in on hiring, firing[,] promotion[,] or discipline."[34]    Defendant disclosed the information gathered to Plaintiffs on March 22, 2019, a week before the corporate representative deposition was taken.[35]   The disclosed information purportedly included responses from eleven managers that had not previously been disclosed to Plaintiffs.[36]   Defendant filed its supplement to the motion for summary judgment on March 29, 2019.[37] Attached to the supplement were the declarations of individuals who had purportedly not been disclosed to Plaintiffs.[38]

While Plaintiffs argue that the supplement raised new arguments, in actuality, the supplement only provided additional factual support for legal arguments already raised.[39]   Plaintiffs also argue that they were prejudiced by the late production of material evidence.   The court's recommendation does not rely on Defendant's supplement or the attached evidence.

Accordingly, Plaintiffs' motion to strike is **DENIED AS MOOT** as to Defendant's supplement to its motion for summary judgment and the attached evidence.   Should the court's recommendation not be

---

[34]    See Doc. 120, Tr. of Feb. 7, 2019 Hearing p. 40.

[35]    See Doc. 122-3, Def.'s 4th Supp. Objs. and Ans. to Pls.' Interrogs; Doc. 135, Def.'s Resp. to Pls.' Mot. to Strike p. 3.

[36]    See Doc. 130, Pls.' Mot. to Strike p. 3.

[37]    See Doc. 122, Def.'s Supp. to Mot. for Summ. J.

[38]    See Doc. 130, Pls.' Mot. to Strike pp. 3-4.

[39]    Compare Doc. 122, Def.'s Supp. to Mot. for Summ. J., with Doc. 110, Def.'s Mot. for Summ. J.

adopted, the court will reconsider this order.

**B.    Declaration of Tonya Jacobs**

Plaintiffs argue that Tonya Jabobs's declaration should be stricken because it is not based on personal knowledge and because summaries attached to the declaration are not based on competent evidence.   The court's recommendation does not rely on Tonya Jacobs's declaration.   Accordingly, Plaintiffs' motion to strike is **DENIED AS MOOT** as to Tonya Jacobs's declaration.   Should the court's recommendation not be adopted, the court will reconsider this order.

**C.    Declaration of John Castetter**

Plaintiffs move to strike paragraphs six through eleven of John Castetter's declaration because they are not based on personal knowledge and attempt to provide legal conclusions.   Plaintiffs also move to strike paragraph fifteen of Castetter's declaration because it is an incomplete summary of data.

Castetter is the President of Defendant.[40]   In paragraphs six through eleven of his declaration Castetter describes the general responsibilities of Defendant's operators and engineers.[41] Castetter's description is detailed and does not simply list legal conclusions as Plaintiffs suggest.   Additionally, the general responsibilities of Defendant's operators and engineers is

---

[40]    See Doc. 110-3, Ex. B to Def.'s Mot. for Summ. J. p. 1.

[41]    See id. pp. 2-4.

certainly within his knowledge.  Further, Plaintiffs were free to contest Castetter's statements with opposing evidence and have deposed Castetter.

In paragraph fifteen, Castetter lists the GVWRs of various vehicles driven by some of the Plaintiffs during their employment. Castetter also lists each vehicle driven by a few class members, a basic description of the vehicle, and the vehicle's VIN number. Castetter states that he determined the GVWR by inputting the VIN number of each vehicle on the National Highway Transportation Safety Administration's Vin Decoder website.  Castetter also states that he found this information from vehicle assignment records and fuel card records, which have been produced to Plaintiffs.  The court finds that this is competent summary judgment evidence, but notes that it is not a complete list of the vehicles driven by the listed Plaintiffs, as Plaintiffs point out.

For these reasons, Plaintiffs' motion to strike is **DENIED** with respect to Castetter's declaration.

D.    **Declaration of Josh Gotkin**

Finally, Plaintiffs move to strike Josh Gotkin's declaration because it is an expert affidavit that does not include the materials on which the opinion relied.  The court's recommendation does not rely on Josh Gotkin's declaration.  Accordingly, Plaintiffs' motion to strike is **DENIED AS MOOT** as to Josh Gotkin's declaration.  Should the court's recommendation not be adopted, the

court will reconsider this order.

### III.   Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A., 759 F.3d 498, 504 (5th Cir. 2014).   A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Coastal Agricultural Supply, Inc., 759 F.3d at 504 (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  See id. at 505 (quoting Celotex Corp., 477 U.S. at 323).   If the movant carries its burden, the nonmovant may not rest on the allegations or denials in the pleading but must respond with evidence showing a genuine factual dispute.  See id.  The court must accept all of

10

the nonmovant's evidence as true and draw all justifiable inferences in her favor. <u>Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.</u>, 759 F.3d 498, 505 (5th Cir. 2014)(quoting <u>Anderson</u>, 477 U.S. at 255).

## IV. Analysis

Defendant argues that it is entitled to summary judgment because Plaintiffs fall under the Motor Carrier Act's ("MCA") exemption to the FLSA. Plaintiffs argue that they fall under an exception to the MCA exemption.

## A.   <u>Federal Rule of Civil Procedure ("Rule") 56</u>

As a preliminary matter, Defendant contends that the court should consider most of its evidence as undisputed because Plaintiffs failed to support their arguments with specific cites to evidence.[42]

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "The court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." <u>RSR</u>

---

[42]    <u>See</u> Doc. 134, Def.'s Reply in Support of Mot. for Summ. J. p. 2.

Corp. v. Int'l Ins. Co., 612 F.3d 851, 857 (5th Cir. 2010)(internal

citations omitted) (citing Ragas v. Tenn. Gas Pipeline Co., 136

F.3d 455, 458 (5th Cir. 1998)).  Under Rule 56(e):

> If a party fails to properly support an assertion of fact
> or fails to properly address another party's assertion of
> fact as required by Rule 56(c), the court may:
>
> > (1) give an opportunity to properly support or
> > address the fact;
> >
> > (2) consider the fact undisputed for purposes of the
> > motion;
> >
> > (3) grant summary judgment if the motion and
> > supporting materials — including the facts
> > considered undisputed — show that the movant is
> > entitled to it; or
> >
> > (4) issue any other appropriate order.

Throughout their response, Plaintiffs have attempted to rebut

many of Defendant's factual assertions without citation to specific

pages in the record.  For example, to rebut Defendant's assertion

that any use by Plaintiffs of TCA-eligible vehicles was de minimis,

Plaintiffs claim that there is a genuine issue of material fact and

footnote the following statement: "Defendant's documents and

Plaintiffs' deposition and interrogatory testimony establish that

Plaintiffs regularly drove TCA Eligible Vehicles so frequently

there would be no way for the Defendant to contend that doing so

was de minimis."[43]  This is insufficient under Rule 56.

This is not the first time the court has dealt with

---

[43]    See Doc. 128, Pls.' Resp. to Defs.' Mot. for Summ. J. p. 11.

Plaintiffs' counsel's careless briefing practice.[44]  Accordingly,
where Plaintiffs have failed to properly address Defendant's
assertions of fact, the court will consider the fact undisputed,
and, if appropriate, recommend that summary judgment be granted.
See Fed. R. Civ. P. 56(c)(2)-(3).

## B.  **MCA Exemption**

The MCA exempts employees from the FLSA "whom the Secretary of
Transportation has power to establish qualifications and maximum
hours of service pursuant to the provisions of section 31502 of
Title 49."  29 U.S.C. § 213(b)(1).  For the MCA to apply, an
employee must be:

> (1) employed by a motor carrier or private carrier, as
> defined by 49 U.S.C. § 13102, and (2) engage in
> activities of a character directly affecting the safety
> of operation of motor vehicles in the transportation on
> public highways of passengers or property in interstate
> or foreign commerce within the meaning of the MCA.

Spangler v. Mourik, L.P., Civil Action No. H-16-0349, 2017 WL
3412117, at *14 (S.D. Tex. Mar. 8, 2017)(slip op.)(citing 29 C.F.R.
§ 782.2(a)).

Work that falls under activities affecting safety or property
includes "the work of drivers, driver's helpers, loaders, and
mechanics employed by such carriers."  29 C.F.R. § 782.2(b)(1).  A
driver is defined as "an individual who drives a motor vehicle in

---

[44]     See Doc. 140, Ord. Dated June 6, 2019 p. 1 n.3 ("Throughout this
lawsuit, Plaintiffs' counsel have been unable to comply with the court's
deadlines.  This is the last time the court will tolerate Plaintiffs'
sloppy conduct.").

transportation which is, within the meaning of the MCA, in interstate or foreign commerce." 29 C.F.R. § 782.3(a). According to the regulations, the "general rule" is:

> if the bona fide duties of the job performed by the employee are in fact such that he is (or, in the case of a member of a group of drivers, driver's helpers, loaders, or mechanics employed by a common carrier and engaged in safety-affecting occupations, that he is likely to be) called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities . . . he comes within the exemption in all workweeks when he is employed at such job . . . Where this is the case, the rule applies regardless of the proportion of the employee's time or of his activities which is actually devoted to such safety-affecting work in the particular workweek, and the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting "safety of operation."

Allen v. Coil Tubing Servs., LLC, 755 F.3d 279, 284 (5th Cir. 2014)(quoting 29 C.F.R. § 782.2(b)(3)), abrogated on other grounds by Amaya v. NOYPI Movers, L.L.C., 741 Fed. App'x 203, 204-05 n.2 (5th Cir. 2018).

> "On the other hand, where the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be de minimis, the exemption will not apply to [the employee] in any workweek so long as there is no change in his duties."

Id. (quoting 29 C.F.R. § 782.2(b)(3)).

### 1.   DOT Jurisdiction

When analyzing the MCA exemption, courts must first address whether Plaintiffs "are employed by carriers whose transportation of property by a motor vehicle is subject to" the jurisdiction of

14

the DOT.  *Songer v. Dillon Resources, Inc.*, 618 F.3d 467, 472 (5th Cir. 2010)(quoting 29 C.F.R. § 782.2(a)(1)) abrogated on other grounds by Amaya, 741 Fed. App'x at 204-05 n.2.  To fall under the jurisdiction of the Secretary of the DOT, a motor carrier must engage in interstate commerce:

> Although the MCA defines interstate commerce as commerce "between a place in a state and a place in another state," it has not been applied literally by the courts. In fact, we have defined it as the actual transport of goods across state lines or the intrastate transport of goods in the flow of interstate commerce.

*Id.* (quoting *Siller v. L&F Distributors, Ltd.*, No. 96-40549, 1997 WL 114897, at *1 (5th Cir. 1997)).

   Defendant is a registered motor carrier with the DOT.[45] Accordingly, Defendant falls under the DOT's jurisdiction.

## 2.  **Affecting Safety in Interstate Commerce**

   Next, the court must look to whether Plaintiffs "engage in activities that directly affect the operational safety of motor vehicles in the transport of property in interstate commerce" under the MCA.  *Songer*, 618 F.3d at 473 (quoting 29 C.F.R. § 782.2(a)(2)).  In making this determination, courts look to whether the employees are "likely to be . . . called upon in the ordinary course of [their] work to perform . . . safety-affecting activities."  29 C.F.R. § 782.2(b)(3).  The MCA exemption applies "even in a workweek when the employee happens to perform no work

---

   [45]   See Doc. 110-3, Ex. C to Def.'s Mot. for Summ. J., Decl. of John Castetter p. 4; Doc. 110-10, Ex. I to Def.'s Mot. for Summ. J., Def.'s DOT Registration.

directly affecting safety of operation so long as the employee's *continuing duties* involve activities that affect motor vehicle safety in interstate transport." <u>Songer</u>, 618 F.3d at 475 (internal quotation marks omitted)(quoting 29 C.F.R. § 782.2(b)(3)).

Here, summary judgment evidence supports a conclusion that Plaintiffs are likely to be called upon to drive across state lines to complete jobs and multiple Plaintiffs have testified that they regularly drove across state lines for jobs.[46]  This is sufficient to meet the second element of the MCA exemption.  <u>See</u> 29 C.F.R. § 782.3(a); <u>Allen</u>, 755 F.3d at 284 (quoting 29 C.F.R. § 782.2(b)(3)).

The court finds that the MCA exemption applies to the Plaintiffs.  Plaintiffs do not argue that the MCA exemption does not apply to them.[47]  Rather, Plaintiffs argue that an exception to the MCA exemption applies to them.[48]

## C.  **The TCA**

The Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU") Technical Corrections Act of 2008 ("TCA") altered the FLSA and its MCA exemption. <u>Spangler</u>, 2017 WL 3412117, at *15.  Once enacted, "[t]he TCA both

---

[46]    <u>See</u> Doc. 110-3, Ex. C to Def.'s Mot. for Summ. J., Decl. of John Castetter pp. 4-5; Doc. 110-5, Ex. D to Def.'s Mot. for Summ. J., Brent Baccus Dep. pp 25:16-19, 39:14-16; Doc. 110-6, Ex. E to Def.'s Mot. for Summ. J., Brian Baccus Dep. pp. 20:8-10, 31:9-12; Doc. 110-8, Ex. G to Def.'s Mot. for Summ. J., Frederick Matz Dep. p. 47:1-8; Doc. 110-9, Ex. H to Def.'s Mot. for Summ. J., William Cook Dep pp. 25:20-22, 45:25-46:5.

[47]    <u>See</u> Doc. 128, Pls.' Resp. to Def.'s Mot. for Summ. J. p. 8.

[48]    <u>See</u> <u>id.</u>

restored—and therefore widened—the scope of the Secretary of Transportation's regulatory jurisdiction . . . *and* simultaneously narrowed the scope of the MCA exemption.   It accomplished the latter by broadening the FLSA overtime requirement to covered employee[s] notwithstanding the MCA exemption." <u>Aikins v. Warrior Energy Servs. Corp.</u>, Civil Action No. 6:13-CV-54, 2015 WL 1221255, at *4 (S.D. Tex. Mar. 17, 2015)(unpublished)(internal citations and quotations omitted).   The TCA defines "covered employee" as "an individual":

> (1)  who is employed by a motor carrier or motor private carrier (as such terms are defined by section 13102 of title 49, United States Code, as amended by section 305);
>
> (2)  whose work, in whole or in part, is defined—
>
> > (A)  as that of a driver, driver's helper, loader, or mechanic; and
> >
> > (B)  as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce . . . ; and
>
> (3)  who performs duties on motor vehicles weighing 10,000 pounds or less.

SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110-244 (hereinafter "TCA"), §§ 305-06, 122 Stat. 1572, 160-21 (June 6, 2008); <u>Spangler</u>, 2017 WL 3412117, at *15.

To determine whether a vehicle is TCA-eligible, the vehicle's GVWR is used.   <u>Carley v. Crest Pumping Techs., L.L.C.</u>, 890 F.3d 575, 582 (5th Cir. 2018).   When a trailer is attached to the

vehicle, the vehicle's GVWR plus the weight of the trailer is used to determine whether the vehicle is TCA-eligible.  See Albanil v. Coast 2 Coast, Inc., 444 Fed. App'x 788, 798 (5th Cir. 2011)(unpublished).  A vehicle is not TCA-eligible if it is "used in transporting material found by the Secretary of Transportation to be hazardous under [49 U.S.C. § 5103] and transported in a quantity requiring placarding under regulations prescribed by the Secretary under [49 U.S.C. § 5103] . . . ."  TCA § 306(c)(2)(B)(iii).

It is the Plaintiffs' burden to show that they fall under the TCA's exception to the MCA exemption.  Rychorcewicz v. Welltec, Inc., 768 Fed. App'x 252, 256-257 (5th Cir. 2019)(unpublished). This includes the Plaintiffs' showing that they worked on a TCA-eligible vehicle and that they did so on a more than de minimis basis.  See id.

In 2010, the DOL issued Field Assistance Bulletin 2010-2 (the "Bulletin"),[49] which clarified the effect of the TCA.  The Bulletin states that where an employee falls under the MCA exemption, but "in some workweeks (whether the entire week or part of the week), [the employee] also performs safety affecting duties on a [TCA eligible vehicle]" that employee is nonexempt under the TCA "in those workweeks where work is also performed on a [TCA-eligible vehicle]."  "[T]he deference afforded to the Bulletin 'depends on

_____

[49]   DOL, Field Assistance Bulletin No. 2010-2 (Nov. 4, 2010), https://www.dol.gov/whd/FieldBulletins/FAB2010_2.pdf.

the thoroughness evident in [the DOL's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" Carley, 890 F.3d at 582 (quoting Baylor Cty. Hosp. Dist. v. Price, 850 F.3d 257, 261 (5th Cir. 2017).  The Fifth Circuit has previously found the Bulletin persuasive where it concluded that GVWR was the proper way to measure a vehicles weight for the purposes of the TCA.  See id.

In Spangler, decided prior to Carley, the court explained that "[t]o establish entitlement to summary judgment, an employer must provide evidence either that its employees exclusively drove vehicles greater than 10,000 pounds during a relevant workweek, or that any work with smaller vehicles was merely de minimis work." 2017 WL 3412117, at *17 (citing Roche v. S-3 Pump Serv., Inc., 154 F. Supp.3d 441, 448-49 (W.D. Tex. 2016)).  The Fifth Circuit's opinions in Carley and Rychorcewicz explicitly put this burden on Plaintiffs.  Carley, 890 F.3d at 580; Rychorcewicz, 768 Fed. App'x at 256-257.  Reading the Bulletin[50] in conjunction with Carley and Rychorcewicz, it is Plaintiffs' burden to show that in a relevant workweek they worked on a TCA-eligible vehicle on a more than de minimis basis.  For those workweeks where Plaintiffs meet this burden, they would be eligible for overtime pay under the FLSA.

---

[50]     The court finds the Bulletin, as cited above, persuasive to the extent that it requires a party to show TCA eligibility on a week by week basis.

Here, to carry their burden, Plaintiffs cite to four exhibits: (1) the declaration of Elizabeth Beck ("Beck"), one of Plaintiffs' counsel, and its attachments; (2) the declaration of Brent Baccus; (3) the declaration of Brian Baccus; and (4) an Excel spreadsheet of month end pickup recap lists, which is 5309 Excel rows long and spans 271 pages ("Exhibit BB").[51]  None of the exhibits is cited with any specificity.  The court will not scour Exhibit BB for a fact issue.  Further, as discussed above, the court will not consider the evidence Plaintiff attached to its response but did not specifically cite regarding the TCA issue.

### 1.    Beck Declaration

In her declaration, Beck states that she took the month-end pickup data and narrowed it down to only Plaintiffs who have opted into this lawsuit.[52]  Beck then input the VINs associated with each Plaintiff into the National Highway Transportation Safety Administration's VIN decoder and recorded the vehicle's GVWR.[53] Attachment One to Beck's declaration is a summary of this data and Attachment Two is the VIN decoder search results.[54]  The summary contained in Attachment One contains: (1) each Plaintiff's first and last name; (2) the VIN numbers associated with each Plaintiff,

---

[51]    See Doc. 128, Pls.' Resp. to Def.'s Mot. for Summ. J.

[52]    See Doc. 129-1, Ex. A to Pls.' Resp. to Def.'s Mot. for Summ. J., Beck Decl. pp. 1-2.

[53]    See id.

[54]    See id. pp. 3-138.

if any; and (3) the GVWR of the vehicle with the corresponding VIN number.[55]

The summary in Attachment One fails to carry Plaintiffs' TCA burden for multiple reasons.  First, for many of the Plaintiffs, the VIN and GVWR sections are blank.  Second, for many of the Plaintiffs who have values in the corresponding VIN and GVWR sections, the only GVWR inputs associated with these Plaintiffs are GVWRs that exceed 10,001 pounds, and thus, these vehicles would not even be TCA-eligible.[56]

The final issue with Attachment One is that it is completely devoid of any specificity.  Attachment One does not specify: (1) what work, if any, each Plaintiff allegedly performed on any vehicle with a GVWR less than 10,001 pounds; (2) the date or dates that said work was performed; or (3) whether the vehicles with GVWR less than 10,001 pounds had trailers attached or were used in transporting hazardous materials such that they were not TCA-eligible.[57]  Accordingly, from Attachment One, a reasonable juror would be unable to conclude, for any specific week, that any Plaintiff worked on a TCA-eligible vehicle on a more than de minimis basis.

2.   **Brent Baccus Declaration**

---

[55]   See id. pp. 3-6.

[56]   See id.

[57]   See id.

The only statement related to the TCA inquiry made in Brent Baccus's declaration is the following:

> While I was employed by [Defendant] I drove both a Ford F-150, Ford F-250 and a Ford F-350. It was regular practice that [Defendant] would ask me to perform "hotshot" runs to other well sites. If the current job was in the logging stage I would ask the operator on the job to perform the hotshot so that I could stay and monitor the logging process. If the job was not in the logging state, I would perform the hotshot myself.[58]

Brent Baccus's declaration fails to meet Plaintiffs' burden for many of the same reasons as Beck's declaration. The declaration does not specify: (1) what date or dates a TCA-eligible vehicle was driven or worked on; (2) what type of vehicle was used for a "hotshot" run; (3) why a hotshot run should be deemed more than de minimis; and (4) whether the vehicles used in a "hotshot" run carried hazardous materials or had a trailer attached. Further, it is not clear that any of the three vehicles Brent Baccus drove were less than 10,001 pounds because his declaration only states the vehicle model. From Brent Baccus's declaration, a reasonable juror would be unable to conclude, for any specific week, that Brent Baccus or any other Plaintiff worked on a TCA-eligible vehicle on a more than de minimis basis.

### 3.   Brian Baccus Declaration

The only statement related to the TCA inquiry made in Brian Baccus's declaration is the following: "While I was employed by

---

[58]   See Doc. 129-3, Ex. C to Pls.' Resp. to Def.'s Mot. for Summ. J., Brent Baccus Decl. p. 2.

[Defendant] I drove both a Ford F-150 and a Ford F-350.  I would drive this vehicle to and from the job site and on any 'hotshot' runs that [Defendant] directed me on."  Brian Baccus's declaration does not specify: (1) what date or dates a TCA-eligible vehicle was driven or worked on; (2) which of the two vehicles he used for a "hotshot" run; and (3) whether the vehicles used in a "hotshot" run carried hazardous materials or had a trailer attached.  Further, it is not clear that either of the two vehicle Brent Baccus drove were less than 10,001 pounds because his declaration only states the vehicle model.  From Brian Baccus's declaration, a reasonable juror would be unable to conclude, for any specific week, that Brian Baccus or any other Plaintiff worked on a TCA-eligible vehicle on a more than de minimis basis.

Plaintiffs have cited to no other evidence to carry their TCA burden and, as discussed above, the court does not credit Plaintiffs' statement that "Defendant's documents and Plaintiffs' deposition and interrogatory testimony establish that Plaintiffs regularly drove TCA Eligible Vehicles so frequently there would be no way for the Defendant to contend that doing so was de minimis."[59] Further, Plaintiffs have not even addressed the issue raised by Defendant regarding vehicles that carried hazardous materials or had trailers attached.

For these reasons, the court finds that Plaintiffs are exempt

---

[59]    See Doc. 128, Pls.' Resp. to Def.'s Mot. for Summ. J. p. 11.

from the FLSA under the MCA exemption, and Plaintiffs have failed to carry their burden to establish that they fell into the TCA exception to the MCA exemption.

## D.   **Jeffrey Meador**

Jeffrey Meador ("Meador") filed his lawsuit against Defendant in the District of New Mexico, alleging violations of the New Mexico Minimum Wage Act ("NMMWA").[60] Subsequently, Meador's lawsuit was transferred to this court and consolidated into this lawsuit.[61] Meador is the only Plaintiff in this lawsuit with NMMWA claims.

Meador failed to appear at his deposition, on a date that was selected by him.[62] Additionally, Meador failed to explain why he was unable to attend his scheduled deposition and failed to propose a new date for his deposition.[63] Finally, Meador did not respond to Defendant's summary judgment arguments against his NMMWA claims or to Defendant's assertion that Meador does not desire to proceed in this matter.[64]

The Federal Rules empower a district court to dismiss an action "[f]or failure of the plaintiff to prosecute or to comply

---

[60]   See Doc. 1 in 4:18-cv-02198, Pl.'s Orig. Compl.

[61]   See Doc. 38 in 4:18-cv-02198, Ord. Dated June 26, 2018; Doc. 43 in 4:18-cv-02198, Ord. Dated July 12, 2018.

[62]   See Doc. 110-13, Ex. L to Def.'s Mot. for Summ. J., Meador Cert. of Nonappearance.

[63]   See Doc. 110-15, Ex. N to Def.'s Mot. for Summ. J., Correspondence Regarding Meador Nonappearance.

[64]   See Doc. 110, Def.'s Mot. for Summ. J. p. 21.

with these rules or any order of court."  Fed. R. Civ. P. 41(b);
see also Larson v. Scott, 157 F.3d 1030, 1031 (5th Cir. 1998).
Dismissal for failure to prosecute may be upon motion of the
defendant or sua sponte.  Clewis v. Medco Health Sols., Inc.,
No. 3:12-CV-5208-L, 2014 WL 840026, at * 3 (N.D. Tex. Mar. 4, 2014),
aff'd, 578 F. App'x 469 (5th Cir. 2014) (unpublished).  The court's
authority is derived from the court's power to manage its own
docket "to ensure the orderly and expeditious disposition of
cases."  Berry v. CIGNA/RSI-CIGNA, 975 F.2d 1188, 1191 (5th Cir.
1992)(quoting Link v. Wabash R.R. Co., 370 U.S. 626, 630-31
(1962)).

Considering the above conduct, the court finds that Meador has
failed to prosecute his claims in this lawsuit.  Rather than weigh
in on the NMMWA without proper briefing, the court **RECOMMENDS** that
Meador be **DISMISSED** for his failure to prosecute his claims.[65]

### IV.  Conclusion[66]

Based on the foregoing, the court **RECOMMENDS** that Defendant's
Motion for Summary Judgment be **GRANTED** as to all claims except for
Meador's, and Meador's claims be **DISMISSED** for his failure to

---

[65]   If Meador wishes to prosecute his claims, he may explain his shortcomings in objection a timely filed objection to this memorandum and recommendation.

[66]   As the court finds that Plaintiffs fall under the MCA exemption and are not covered by the TCA, and that Meador should be dismissed on other grounds, the court will not address the other arguments raised.

prosecute.   The court further **ORDERS** that Plaintiffs' Motion to Strike is **DENIED** as specified above.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.   Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 30th day of August, 2019.

Nancy K. Johnson
United States Magistrate Judge

26